We're going to now move to the final case of the morning. This is Appeal 22-1126, United States v. Roman Lloyd, and we're going to begin with Mr. Drysdale. Sir, go ahead. Thank you. Is this from Mr. Forbes? I think so. I can't let my clerks take it. Thank you. Thank you, Your Honors. May it please the Court, Tom Drysdale on behalf of the defendant, Appellant Roman Lloyd. We're here today because the Speedy Trial Act was violated, and it was violated because it took too long to transport Mr. Lloyd to a mental health competency evaluation, and the government did not provide a reasonable explanation for the delay. So the only question that's before this Court today is whether the dismissal here should have been with or without prejudice because the Court was mandated to dismiss this case. And that's a narrow question because 3162A gives us three factors that the District Court is supposed to consider, and that's all that's before the Court today is how the District Judge exercised discretion in considering those three factors because that's all she considered. Those factors are the seriousness of the offense, the facts and circumstances that led to dismissal, and the impact of re-prosecution on the administration of justice. Under the Taylor case, how much did the District Judge have to say on each individual factor, or are we to look at that seven pages of transcript, see how it might interact, and see if that's sufficient? I don't think the District Judge had to say any particular amount on each particular factor one by one. I don't necessarily think she had to do that, but when you look at her reasoning, she said, here's why I'm dismissing this case without prejudice. She says, she looks at factor one, she weighs it, she says all federal felonies are serious, this one's not the most serious thing in the world, but it's serious because they're all serious, but I'm going to put the most weight on factor two. That's what she says, and when she comes to factor three, and I'll address this a little more later, she says, I don't know how to apply that factor, but I'm going to apply it in favor of the government. That alone is an abuse of discretion. She says, I don't really know how to apply this factor, but I find that it does not favor dismissal without prejudice. If we were to agree with you on that third factor, I know I'm accelerating you towards that point, but if we were to agree with you, how do we reconcile that with so much case law that says, don't dismiss with prejudice, dismiss without prejudice? I think what the case law says on that point is certainly, I must admit, when we look at the cases, most of them are without prejudice, but I think one of the things that's being overemphasized here is bad faith. The government seems to say that we have to have bad faith to dismiss a case without prejudice. That's actually not true. We look at the Supreme Court's decision, particularly in Barker v. Wingo, and that case says, yes, bad faith certainly pushes us further towards dismissal with prejudice, but when we look at a neutral reason such as negligence, that still has to be weighed because ultimately that negligence, that responsibility, those circumstances rest with the government. Because they control this whole process. So the only explanation we've ever gotten from the government here is this process takes a long time, it's going to continue to take a long time, and nowhere, anywhere in this record, in the district court, did the government offer any way that it's going to fix this transportation process. And that's the crux of our argument here, is that if this is not dismissed with prejudice, the government is going to continue to do this. And it is still happening. We've cited cases in our reply brief and in our brief where this is still going on. It's not being fixed. The government finally on appeal tries to offer a couple things that it might do to fix this issue, but they're not even doing those things. It strikes me that bad faith may not be the right connection here because everyone seemed to be operating under the same presumption with regard to how the statute should be interpreted. We certainly disagree with that, Your Honor. There's nothing in the record that says that we were operating under the presumption that the government did not have to follow H-7, the transportation time. And I might have overstated it. Why 15 months then to bring the motion to dismiss? Well, first of all, let's talk a little bit about that. That's never been raised. That's waived. The government never argued that in the district court. They put it in their factual background, and then they said the time that you brought, the 15 months, that means you cannot bring a motion to dismiss under the Speedy Trial Act. That's clearly wrong. The Act says that it's any time before you plead guilty. So that's the only way the government argued that point, that time between him coming back and then filing the motion to dismiss. The government and the district court chose a specific litigation path. That's waiver. Waiver rules apply to the government just like they do to the defense. So the government never said to the district court, hey, that 15 months there, that favors dismissal without prejudice. And because the government didn't raise the issue, if you look at the district court's opinion, the district court does not use that factor in the exercise of its discretion. And the other problem with that is we never got to respond to it. And that's what I put in my reply brief. That delay was the government's fault, too. For some reason, they just stopped giving us discovery while Mr. Lloyd was out for a competency event. Yeah, Mr. Dreisel, I mean, that aligns with my reading the record. I mean, I don't see anything about the 15-month delay below. I don't see it in the district court opinion. The argument, the point that the parties were going back and forth on the district court, and it's in the transcript. I don't know if you argued it. Mr. Patton may have argued it. I actually did the writing on it. Mr. Patton did the oral argument on it. Yeah, so there's this back and forth about my words, not the district court's, not any party's words. But effectively, there was a concern that the district court expressed that the defendant and defense counsel may have been a bit kind of complicit in this by waiving or agreeing to exclude all of the time under the speedy trial act, indeed going so far as to prepare the order. You know what I'm talking about? I do. I know exactly what you're talking about. Yeah, that's what the back and forth was. But it wasn't about the 15 months. Yeah, and I think the problem with that is the order. So the order under H1A is right. It says the time for the mental health evaluation is excluded pursuant to H1A. That's right. That's a correct statement of the law. What were we supposed to object to? Just because that is there and because we memorialized it in a written order. Yeah, I think what's unfortunate is that maybe through no one's fault whatsoever, but the delays then happened, as a matter of fact. They did. Right, and it just got brought to the district court's attention. Again, nobody may be at fault for this, just very late. I think the government is at fault for this. The government says, here's when Roman Lloyd leaves. Here's where he's going. Here's how he's getting there. They've never at any point in this litigation said that the transportation could have happened earlier had that H7F language been in there, the transportation language. Not once have they suggested they could have did this faster. In fact, that seems to be the crux of their argument. I don't know, though. I don't understand. Why do you have to go so far, and maybe you're not, but why do you have to go so far as to assign fault? You can say, look, that's up to you. If you want to engage in a bunch of transportation delays, fine. Just recognize the speedy trial clock is going to expire on you. Well, first of all, we have no obligation to tell them that. They have an obligation to know the law. In fact, they've admitted that they didn't really know the law in this case on that point, and they admitted that they have the obligation to do so. So we don't have to tell them, hey, follow that 10-day reasonable time period. And the fact that they didn't and the fact that they are going to continue to do this is really where this drives home. Mr. Drysdale, what's the basis for your assessment they're going to continue to do this? Well, Your Honor, first of all, the cases that we've cited that happened before this, it's continuing to happen. I can cite this court to a case that we cited in our, I believe, our reply brief, United States v. Jasmine Bradley. It's a different aspect of the IDRA, but you get four months to restore competency. They took seven, and a lot of that was a transportation delay. They didn't offer up any type of local facility like they've suggested here. We offered the Bosaw case in here where we tried to basically preemptively object to this. It was the very next case that Mr. Patton went in front of Judge Darrow and said, hey, just an FYI, Judge, I'm going to go ahead right now and raise the Roman Lloyd issue. And Judge Darrow basically said, well, I don't know what you want me to do about that. There's nothing I can do right now. Your objection is noted. So I don't know what we're supposed to do to fix this, and it's completely in their control. And I know this court has said that dismissal without prejudice is not a toothless sanction, but they walked back into the district court two hours later with a complaint like nothing ever happened. It is in this aspect. So we think that based on the evidence here and based on the way the district judge exercised discretion by blaming this entirely on Mr. Lloyd, that that is an abuse of discretion and this should be reversed. Thank you. We will be giving you some rebuttal time. Thank you, Your Honor. Mr. Keenster, let me recognize you on behalf of the government. May it please the court. Good morning, Your Honors. Jeff Keenster on behalf of the United States. The district court acted well within its discretion here in finding a dismissal without prejudice to be the appropriate resolution. As this court has itself explained, a defendant who waits passively while the time runs has less of a claim to dismissal with prejudice than one who demands but doesn't receive prompt attention. Or as the court put it in Sykes, the district court is justified in observing that the defendant didn't bring the number of non-excludable delays or didn't bring the delay to the court's attention as the number of non-excludable days accumulated. Mr. Keenster, same question I asked Mr. Drysdale. How much did the district judge have to say on each factor? Are we to look at that entire seven pages of transcript and see if there's interactions? I'm specifically concerned about this third factor. She says, I don't know how to apply this. Sure. So the court is required to address each of the three factors. But that doesn't mean that the court has to restate its explanations in connection with each one. And so the first thing I'd like to note is that the third factor is essentially a catch-all that applies the first two, as well as any other relevant considerations, to the competing interests that are at stake in a speedy trial dismissal. On the one hand, the administration of the act, and the other hand, the administration of justice. And so that's where really the first two factors that the court had gone through really apply themselves to the speedy trial issue. As to the administration of justice, the court explained, and there can be no doubting, that this case is serious. This is a serious offense. And then as to the administration of the act, it becomes relevant that the defendant had never raised this. The parties, including the court, were under the understanding that there was no speedy trial problem. And so under those circumstances, where it's an inadvertent violation, not the product of bad faith by the government, a dismissal with prejudice isn't necessary to promote the administration of the act. As my colleague acknowledges, and the Supreme Court has expressly stated, a dismissal without prejudice is not a toothless sanction that does promote the enforcement of the act itself. As to the district court's acknowledgement of uncertainty, I think the court wasn't saying it didn't understand the law. It correctly acknowledged the three factors that recited this particular factor. And I think it was really just acknowledging, as I've already addressed, that there's not really much more that needed to be said as to this factor by the time the court got there. It had already addressed the seriousness of the offense, which informs the administration of justice, as well as the nature of the violation, which then informs the administration of the act. And I'd note that those things are basically what this court said in Killingsworth, in finding that this same factor supported a dismissal without prejudice. Although Killingsworth, there was never any second indictment, right? So meaning after the dismissal was, and there was reversal on behalf of the court, but at least in the four corners of that opinion, there had not been a new indictment, right? Right, because the district court in that case had dismissed with prejudice. It came up to this court, and this court reversed the dismissal with prejudice, holding that the district court had in fact abused its discretion in noting that the defendant himself was blameless for the delay, and that because the violation was inadvertent, not the product of bad faith, and the offenses there were serious. And so even the third factor, based on those same two considerations that the district court addressed here, supported a dismissal without prejudice under all three factors, including the third. Do you know of any case law that has spoken to the content of the third factor? I mean, you just articulated, you know, fair construction of what those two things are, that it's weighing, it's balancing, but has our court or another court, to your knowledge, said here's what that third factor is getting at? I can't cite a specific case that's gone into the substance of that. I just know how courts have applied it, including in Killingsworth, as I already noted, where I think it does address the two competing interests. Certainly in the Supreme Court, and Zedner talked about the administration of the act in the third factor, that a dismissal without prejudice is not a toothless sanction. So that is something that courts have specifically said in that context. I'd note as well, in terms of the administration of the act, the defendant overstates his case in arguing that this violation here will recur, and the fundamental difficulty with his argument, and the disconnect, is that he equates any transportation period of greater than 10 days with a violation of the act, and that's not at all what the act says. It says that only 10 days are presumptively excluded for transportation, but of course the act allows a total of 70 non-excludable delays to pass before we get to trial. So there will be some times where transportation takes more than 10 days, I'm sure, and in those cases all that means is that some portion of the transportation will count towards the 70 days. That doesn't mean that there's been a violation of the Speedy Trial Act in those cases, any more than, for example, when the defendant needs to use some portion of those 70 days to prepare pretrial motions, which is another period that's not automatically excludable. So the possibility that the transportation will take greater than 10 days doesn't mean that the Speedy Trial Act is being violated in those cases. I'd note that the defendant raises the Supreme Court's case in Barker. Barker addressed a constitutional claim, not a statutory one, so that's not applicable here. This morning the defendant raised Jasmine Bradley. The defendant there was found incompetent before any delays or transportation occurred, so there's no speedy trial implications, and in Bosaw the transportation took six days, I believe. I'd also note that even if your honors were to have concerns about the extent of the district court's explanation, any error there would be harmless and wouldn't warrant a three-minute. This court, of course, can affirm for any ground in the record, and our view is that really the circumstances here not only allow but compel, require a dismissal without prejudice, again, for the reasons already addressed. I'd note also that we know from what the court said at sentencing  it said that a term of six years of imprisonment, which was more than either party requested, and the maximum term of three years of supervised release were necessary, and it specifically said that those terms were necessary to protect the public from serious crimes by this defendant. So that makes very clear the district court's view about the effect of a dismissal, that a dismissal with prejudice would have come at the cost of the administration of justice and would have endangered the public. Unless your honors have any other questions, the government would ask this court to affirm. Thank you, Mr. Keenstra. We'll now move back to Mr. Drysdale, two minutes of rebuttal. Thank you, your honor. The third factor is its own factor. It is not a combination of the first two. It's not a mashup because that renders the third factor superfluous and that's not how we read statutes. What's the best authority for that? Do you know of any? Are there any courts that have spoken to it? I think I agree with my colleague that there is no court that has said this is exactly how you apply the third factor. I believe that we applied it correctly in this case, talking about the fact that this has really no explanation other than this takes a long time and it's going to continue to take a long time. That's how we believe the administration of justice works in this case. So this is not an inadvertent violation as the government just suggested. They basically say over and over, you can quote from the transcripts in the district court, this takes a long time. This is going to continue to take a long time. There was not a clerical error here. That's exactly what they said in the transcript. I can't tell you there's a clerical error. I can just tell you that this takes a really long time and that's why we're out of the realm of Killingsworth because if you look at what happened in Killingsworth, the court, not the DOJ, the court accidentally forgot to set an arraignment and that's what went on in Killingsworth. That's probably true. That's probably nobody's fault. But here, the government, the DOJ controls transportation. Over and over again, the DOJ controls transportation. This is not the same thing as Killingsworth. We look at what did the district court say in analyzing those three factors and the reality of it is factor one didn't really play into this decision. Factor three, the court says I don't know how that applies and factor two is blaming this delay on Mr. Lloyd for not coming forth and telling the court that he was going to be upset if the government exceeded the 10 days of reasonable transportation time. I think as a final note, I'm going to correct something that my colleague said. He said that this court can affirm on any basis in the record. That's not entirely true. This court can affirm on any basis in the record that was presented and argued in the district court. To the extent that we're continuing because that's what they opened with to argue that this 15-month delay on the back end has any relevance to this, it does not. That argument was waived. That does not factor into the decision. It did not factor into the district court's decision. Thank you, Your Honors. Thank you, Mr. Drysdale. Thank you, Mr. Keenstra. The case will be taken under advisement and that will complete our oral arguments for the day.